**LITE DEPALMA GREENBERG**
Joseph J. DePalma
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com
scruzhodge@litedepalma.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT H. PAQUETTE, Individually and on Behalf of All Others Similarly Situated, | : <br> : <br> : Civil Action No. _____ <br> : <br> *Plaintiff*, : <br> : **COMPLAINT – CLASS ACTION FOR** <br> v. : **VIOLATIONS OF SECTIONS 14(a)** <br> : **AND 20(a) OF THE SECURITIES** <br> PINNACLE FOODS INC., ROGER : **EXCHANGE ACT OF 1934** <br> DEROMEDI, MARK CLOUSE, ANN : <br> FANDOZZI, MARK JUNG, JANE : <br> NIELSEN, MUKTESH PANT, : **JURY TRIAL DEMANDED** <br> RAYMOND P. SILCOCK, and : <br> IOANNIS SKOUFALOS, : <br> : <br> *Defendants*. : |

Plaintiff Robert H. Paquette ("Plaintiff"), by and through his undersigned counsel, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and all other similarly situated public shareholders of Pinnacle Foods Inc. ("Pinnacle" or the "Company") against Pinnacle and the members of the Company's board of directors (collectively, the "Board"

or "Individual Defendants," and, together with Pinnacle, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Pinnacle by Conagra Brands, Inc. ("Conagra") by means of the merger of Patriot Merger Sub Inc., a Delaware corporation and a direct wholly owned subsidiary of Conagra ("Merger Sub"), with Pinnacle, after which Pinnacle will survive the merger as a wholly owned subsidiary of Conagra (the "Proposed Transaction").

2.      On June 26, 2018, the Board caused the Company to enter into an Agreement and Plan of Merger ("Merger Agreement"), pursuant to which each common share of Pinnacle will be converted into the right to receive: (i) $43.11 in cash without interest and (ii) 0.6494 shares of Conagra common stock (together, the "Merger Consideration").

3.      On July 25, 2018, in order to convince Pinnacle's shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Conagra; (ii) the valuation analyses performed by Pinnacle's financial advisors, Evercore Group L.L.C. ("Evercore") and Credit Suisse Securities (USA) LLC ("Credit Suisse," and together with Evercore, the "Financial Advisors"), in support of their fairness opinions; and (iii) the sales process leading up to the Proposed Transaction.

5.      The special meeting of Pinnacle shareholders to vote on the Proposed Transaction is forthcoming.  It is therefore imperative that the material information that has been omitted from

the Proxy is disclosed to the Company's shareholders prior to the shareholder vote so that they can properly exercise their corporate suffrage rights.

6.    For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Pinnacle's shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## PARTIES

7.    Plaintiff is a resident of Fairfield County, Connecticut, and is and has been at all relevant times, a shareholder of Pinnacle common stock.

8.    Defendant Pinnacle is a Delaware corporation, with its principal executive offices at 399 Jefferson Road, Parsippany, New Jersey 07054.  Pinnacle is a leading manufacturer, marketer, and distributor of high-quality, branded food products in North America, with annual net sales of approximately $3.1 billion in fiscal 2017.  The Company's brand portfolio enjoys strong household penetration in the United States, where its products can be found in over 85% of U.S. households.  Pinnacle common stock trades on the NYSE under the ticker symbol "PF."

9.    Defendant Roger Deromedi is, and has been at all relevant times, a director of Pinnacle.

10.    Defendant Mark Clouse is, and has been at all relevant times, a director of Pinnacle, and currently serves as the Company's Chief Executive Officer.

11.    Defendant Ann Fandozzi is, and has been at all relevant times, a director of Pinnacle.

12.    Defendant Mark Jung is, and has been at all relevant times, a director of Pinnacle.

13.    Defendant Jane Nielsen is, and has been at all relevant times, a director of Pinnacle.

14.    Defendant Muktesh Pant is, and has been at all relevant times, a director of Pinnacle.

15.    Defendant Raymond P. Silcock is, and has been at all relevant times, a director of Pinnacle.

16.    Defendant Ioannis Skoufalos is, and has been at all relevant times, a director of Pinnacle.

17.    The parties in paragraphs 9 through 16 are referred to herein as the "Individual Defendants" and/or the "Board," collectively with Pinnacle the "Defendants."

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

19.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District and/or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Pinnacle maintains its primary place of business in this District; (iii) a

substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## **CLASS ACTION ALLEGATIONS**

21.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public common shareholders of Pinnacle (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22.     This action is properly maintainable as a class action because:

a)  the Class is so numerous that joinder of all members is impracticable. As of July 30, 2018, there were approximately 119.19 million common shares of Pinnacle outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public shareholders of Pinnacle will be ascertained through discovery;

b)  there are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i.   whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

ii.  whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

       iii.    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

c)  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d)  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e)  the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f)  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g)  a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

## I.    Background of the Company and the Proposed Transaction

23.    Pinnacle is a leading manufacturer, marketer, and distributor of high-quality, branded food products in North America, with annual net sales of approximately $3.1 billion in fiscal 2017. The Company's brand portfolio enjoys strong household penetration in the United

States, where its products can be found in over 85% of U.S. households. Given Pinnacle's diverse portfolio of brands with attractive market positions, its business generates significant and stable cash flows that has enabled Pinnacle to pay regular quarterly dividends to its stockholders, reduce its debt, and drive value creation through both reinvestment in its existing brands and periodic strategic acquisitions.

24. Conagra is one of North America's leading branded food companies. Guided by an entrepreneurial spirit, Conagra combines a rich heritage of making great food with a sharpened focus on innovation. Conagra's portfolio is evolving to satisfy people's changing food preferences.

25. On June 27, 2018, Pinnacle and Conagra issued a joint press release announcing the Proposed Transaction. The press released, stated in relevant part:

### CONAGRA BRANDS TO ACQUIRE PINNACLE FOODS FOR $10.9 BILLION IN CASH AND STOCK

*Will Combine Two Growing Portfolios of Iconic Brands*

*Will Create a Leader in Frozen Foods with an Expanded Presence in Snacks*

*Will Deliver $215 Million in Annual Run-Rate Cost Synergies by Fiscal 2022*

*Low Single-Digit Percentage Adjusted EPS Accretion Expected in Fiscal Year Ended May 2020; High Single-Digit Percentage Adjusted EPS Accretion Expected in Fiscal Year Ended May 2022*

*Conagra Brands' Previously Scheduled Conference Call Rescheduled to 9:30 AM Eastern Time Today*

CHICAGO and PARSIPPANY, N.J. – June 27, 2018 – Conagra Brands, Inc. (NYSE: CAG) and Pinnacle Foods Inc. (NYSE: PF) today announced that their boards of directors have unanimously approved a definitive agreement under which Conagra Brands will acquire all outstanding shares of Pinnacle Foods in a cash and stock transaction valued at approximately $10.9 billion, including

Pinnacle Foods' outstanding net debt. Under the terms of the transaction, Pinnacle Foods shareholders will receive $43.11 per share in cash and 0.6494 shares of Conagra Brands common stock for each share of Pinnacle Foods held. The implied price of $68.00 per Pinnacle Foods share is based on the volume-weighted average price of Conagra Brands' stock for the five days ended June 21, 2018. The purchase price reflects an adjusted EBITDA multiple of 15.8x, based on Pinnacle Foods' estimated fiscal year 2018 results excluding synergies, and 12.1x adjusted EBITDA including run-rate cost synergies.

The combination of two growing portfolios of iconic brands will serve as a catalyst to accelerate value creation for shareholders. The transaction will enhance Conagra Brands' multi-year transformation plan and expand its presence and capabilities in its most strategic categories, including frozen foods and snacks. With annual net sales in excess of $3 billion, Pinnacle Foods' portfolio of frozen, refrigerated and shelf-stable products includes such well-known brands as *Birds Eye, Duncan Hines, Earth Balance, EVOL, Erin's, Gardein, Glutino, Hawaiian Kettle Style Potato Chips, Hungry-Man, Log Cabin, Tim's Cascade Snacks, Udi's, Vlasic* and *Wish-Bone*, among others. Based on both companies' latest fiscal year results, pro forma net sales would have been approximately $11 billion.

"The acquisition of Pinnacle Foods is an exciting next step for Conagra Brands. After three years of transformative work to create a pure-play, branded food company, we are well-positioned to accelerate the next wave of change," said Sean Connolly, president and chief executive officer of Conagra Brands. "The addition of Pinnacle Foods' leading brands in the attractive frozen foods and snacks categories will create a tremendous opportunity for us to further leverage our proven innovation approach, brand-building capabilities, and deep customer relationships. With greater scale across leading, iconic brands, an unwavering focus on driving profitable growth, and a strong balance sheet and cash flow, we are creating a tremendous platform to drive meaningful shareholder value."

"Today's transaction provides Pinnacle Foods shareholders with substantial and immediate value, as well as the opportunity to participate in the significant upside potential of the combined company," said Pinnacle Foods chief executive officer Mark Clouse. "Because of our employees' incredible work, Pinnacle's total shareholder return is approximately 275 percent since our IPO, and today marks an important milestone in the company's journey.

The portfolios and capabilities of both enterprises are impressive and complementary. We look forward to working through a seamless transition with the Conagra Brands team."

**Compelling Strategic and Financial Benefits**

- **Complementary Portfolio of Iconic Brands:** The combined company will have a portfolio of leading, iconic brands within attractive domains such as frozen & refrigerated meals and snacks & sweet treats.
- **Enhanced Ability to Capitalize on Trends in Frozen Foods:** The combination will bring together complementary portfolios in the large, growing and on-trend frozen foods category, positioning the combined company to accelerate innovation and benefit from long-term tailwinds.
- **Compelling Growth Profile:** Conagra Brands and Pinnacle Foods are two of the fastest-growing companies in the consumer packaged foods industry by consumption, and Conagra Brands expects continued momentum based on the enhanced scale and new opportunities to partner with customers that the transaction will provide.
- **EPS Accretive:** On a percentage basis, Conagra Brands expects the transaction to be low single-digit accretive to adjusted EPS in the fiscal year ended May 2020 and high single-digit accretive to adjusted EPS in the fiscal year ended May 2022.
- **Significant Synergy Opportunities:** Conagra Brands expects to achieve approximately $215 million in annual run-rate cost synergies by the end of fiscal year 2022, with one-time cash costs to achieve the synergies estimated at approximately $355 million, inclusive of expected capital expenditures of approximately $150 million.
- **Financing Maintains Solid Investment Grade Credit Rating and Dividend Rate**: The transaction is expected to be financed by Conagra Brands equity issued to Pinnacle Foods shareholders, new transaction debt and incremental cash proceeds from a public equity offering and/or divestitures.
- **Proven Integration Capabilities**: In recent years, Conagra Brands has established a proven track record of executing strategic transactions. The two organizations share complementary portfolios, supply chains, and results-oriented cultures, which are expected to facilitate integration.

**Transaction Details**

Under the terms of the agreement, each share of Pinnacle Foods common stock will be converted into the right to receive $43.11 per share in cash and 0.6494 shares of Conagra Brands common stock.

Conagra Brands has secured $9.0 billion in fully committed bridge financing from affiliates of Goldman Sachs Group, Inc. ("Goldman Sachs"). The $10.9 billion purchase price is expected to be financed with $3.0 billion of Conagra Brands equity issued to Pinnacle Foods shareholders and $7.9 billion in cash consideration funded with $7.3 billion of transaction debt and approximately $600 million of incremental cash proceeds from a public equity offering and/or divestitures. On a pro forma basis, Pinnacle Foods shareholders are expected to own approximately 16% of the combined company, assuming issuance of the incremental equity to the public. Following the transaction, Conagra Brands' pro forma net debt-to-EBITDA ratio is expected to be approximately 5.0x. Conagra Brands is committed to maintaining a solid investment grade credit rating and targeting a debt-to-EBITDA ratio of 3.5x.

Conagra Brands intends to maintain its quarterly dividend at the current annual rate of $0.85 per share during fiscal 2019. In the future, it expects modest dividend increases while it focuses on deleveraging, subject to the approval of its board of directors. The company also plans to repurchase shares under its authorized program only at times and in amounts as is consistent with the prioritization of achieving its leverage targets.

Pinnacle Foods will continue to pay its quarterly dividend at the current annual rate of $1.30 per share until the transaction is completed.

The transaction is expected to close by the end of calendar 2018, subject to the approval of Pinnacle Foods shareholders, the receipt of regulatory approvals and other customary closing conditions.[1]

26.    If the Proposed Transaction is consummated, Pinnacle shareholders will only own

approximately 16% of the combined company and, consequently, will suffer a severe decrease in

their ownership and voting interest in the combined business.  As a result, it is imperative that

---

[1] Pinnacle Foods Inc., Current Report (Form 8-K), at Exhibit 99.1 (Press Release, dated June 27, 2018, jointly issued by Pinnacle Foods Inc. and Conagra Brands, Inc.) (June 27, 2018).

shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and make an informed decision concerning whether to vote in favor of the Proposed Transaction.

## II.    The Materially Incomplete and Misleading Proxy

27.    On July 25, 2018, the Proxy was filed with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

28.    First, the Proxy fails to provide sufficient information concerning the financial projections that were relied upon by the Board and the Financial Advisors in performing their respective valuation analyses in connection with the Proposed Transaction.

29.    Specifically, the proxy discloses that in performing its analyses, Evercore "reviewed … the Conagra Guidance, which was prepared and furnished to Evercore by management of Conagra and approved by management of Pinnacle for use by Evercore in connection with its opinion and analysis."  Proxy at 79.  Likewise, Credit Suisse "reviewed certain other information relating to Pinnacle and Conagra, including … the Conagra Guidance [and] certain publicly available research analyst estimates with respect to Conagra (the "Conagra Analyst Estimates") which Conagra advised Pinnacle, and which Pinnacle directed Credit Suisse

to assume, were consistent with the Conagra Guidance." Proxy at 88. However, the only projections relied upon by the Financial Advisors in rendering their respective "fairness opinions" for which a summary is expressly provided in the Proxy are certain projections prepared by Pinnacle management. The Proxy fails to disclose *any* projections for Conagra, despite the fact that both Financial Advisors relied on such projections concerning Conagra when conducting their respective valuation analyses and fairness opinions. *See, e.g.,* Proxy at 92-93 (disclosing a summary of Credit Suisse's *Financial Analyses—Conagra*). This information is particularly material in light of the fact that, upon closing of the Proposed Transaction, Pinnacle shareholders will only own approximately 16% of the equity interests Conagra. Thus, the values of Conagra and its expected future operating results are material to the value of the Merger Consideration that Pinnacle shareholders are receiving.

30.     By electing to disclose *some* projections, Defendants' obligated themselves to speak the **whole truth** by providing **complete and accurate** projections because if a proxy discloses financial projections and valuation information, such **projections must be complete and accurate**, rather than cherry-picking favorable financial metrics to disclose. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

31.     With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the following key components used in their analysis: (i) the range of terminal values calculated for Pinnacle as of December 31, 2022; (ii) the inputs and assumptions underlying the calculation of the perpetuity growth rate range of 2.0% to 2.5%; (iii) the inputs and assumptions underlying the calculation of the discount rate range of 7.0% to 7.5%; (iv) Pinnacle's tax net

operating losses for the period from January 1, 2023 through December 31, 2027; (v) Pinnacle's net debt as of June 3, 2018; and (vi) the number of filly diluted shares of Pinnacle common stock. *See* Proxy at 84-85.

32.    Similarly, with respect to Credit Suisse's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the following key components used in their analysis: (i) Pinnacle's net operating loss carryforwards; (ii) the implied terminal value ranges calculated for Pinnacle; (iii) the inputs and assumptions underlying the calculation of the terminal value multiple range of 12.00x to 13.00x; and (iv) the inputs and assumptions underlying the calculation of the discount rate range of 6.00% to 7.00%.  *See* Proxy at 92.

33.    These key inputs are material to Pinnacle shareholders, and their omission renders the summaries of Evercore's *Discounted Cash Flow Analysis* and Credit Suisse's *Discounted Cash Flow Analysis* incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow ("DCF") analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars… This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion ***unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the***

> ***rationale underlying these choices***. The substantial discretion and
> lack of guidelines and standards also makes the process vulnerable
> to manipulation to arrive at the "right" answer for fairness. This
> raises a further dilemma in light of the conflicted nature of the
> investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, Pinnacle shareholders cannot evaluate for themselves the reliability of the DCF analyses, make a meaningful determination of whether the implied reference ranges reflect the true value of the Company or was the result of Evercore and Credit Suisse's unreasonable judgment, and make an informed decision regarding whether to vote their shares in the Proposed Transaction.

34. With respect to Evercore's *Selected Public Company Trading Analysis* and *Precedent Transactions Analysis*, the Proxy fails to disclose the following key components used in each analysis: (i) Pinnacle's net debt (calculated as total debt plus noncontrolling interest less cash and cash equivalents) as of June 3, 2018; and (ii) the number of fully diluted outstanding shares of common stock of Pinnacle. *See* Proxy at 81-83, 83-84.

35. Finally, with respect to the sales process leading up to the Proposed Transaction, the Proxy states that on December 6, 2016, the Board formed a Transaction Committee, which was formed to facilitate the Board's review of prospective merger and acquisition transactions and, therefore, was involved in the sales process leading up to the Proposed Transaction. *See* Proxy at 64. However, the Proxy fails to disclose the identities of the individuals who served on the Transaction Committee. As a result, Pinnacle shareholders are unable to determine whether the Transaction Committee was composed of truly independent individuals who acted in the best interests of the Company and its shareholders or, instead, were conflicted and steered the sales process in a manner that gave priority to their own personal interests.

36.     Absent the material information discussed above, Pinnacle shareholders will not be able to make an informed decision regarding whether to vote their shares in the Proposed Transaction.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R . § 240.14a-9 Promulgated Thereunder)**

37.     Plaintiff incorporate each and every allegation set forth above as if fully set forth herein.

38.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

40.     The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

41.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Defendants reviewed

and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Conagra; (ii) the valuation analyses performed by Financial Advisors in support of their fairness opinions; and (iii) the sales process leading up to the Proposed Transaction.

42.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to common shareholders although they could have done so without extraordinary effort.

43.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Financial Advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by the Financial Advisors, as well as their respective fairness opinions and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be

materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review each of the Financial Advisors' analyses in connection with their receipt of the fairness opinions, question the Financial Advisors as to the derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement.

45.    Pinnacle is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

46.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

47.     Plaintiff incorporate each and every allegation set forth above as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of Pinnacle within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Pinnacle, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

51.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.    Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**LITE DEPALMA GREENBERG**

Dated: August 9, 2018                    */s/ Susana Cruz Hodge*
Joseph J. DePalma
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com
scruzhodge@litedepalma.com

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*